In the Matter of the ESTATE OF Derrell Albert MASDEN, a/k/a Bud Masden and Derrell A. Masden, Deceased.

Carol L. Hamilton, Ronald Masden, Donald Masden, Masden Lake Fork Cove Association, Theresa Pierce, and Kenneth Pierce, Appellees,

v.

Lake Fork Cove Alliance, Inc., Appellant.

No. 99CA2327.

Colorado Court of Appeals, Div. V.

March 29, 2001.

The Masters Law Firm, LLC, David L. Masters, Montrose, Colorado, for Appellee Carol L. Hamilton.

Tisdel, Hockersmith, Mueller & McIntosh, P.C., Andrew A. Mueller, Ouray, CO, for Appellees Ronald Masden and Donald Masden.

Weaver & Fitzhugh, Michael F. Deneen, Montrose, CO, for Appellees Masden Lake Fork Cove Association, Theresa Pierce, and Kenneth Pierce.

Dufford, Waldeck, Milburn & Krohn, L.L.P., Nathan A. Keever, Grand Junction, CO, for Appellant.

Opinion by Judge TAUBMAN.

This is a probate proceeding involving a dispute between parties who are neither the personal representative nor the heirs of the decedent, Derrell Albert Masden. Petitioner, the Lake Fork Cove Alliance, Inc. (Alliance), a homeowners association, appeals the trial court's order denying its motion to transfer to it certain property of the estate of the decedent. The Masden Lake Fork Cove Association, also a homeowners association, and Theresa and Kenneth Pierce, property owners and members of that association (collectively Masden Association), are the respondents in this action. We concur with the probate court's statement in its C.R.C.P. 54(b) order that this dispute must be resolved in a separate proceeding, and accordingly affirm the denial of the Alliance's motion and otherwise reverse its order in part and vacate it in part.

Decedent's family owned a 56.46 acre tract of property in Gunnison County. In 1964, the family partitioned the property and eventually sold 80 small circular cabin lots on the property. The family retained 30.71 acres of the property that surrounded the circular lots, and that property is referred to by the parties as the interstitial property. Decedent owned the interstitial property, and his will provided that, upon his death, title to that property was intended to pass to his heirs.

After decedent's will was admitted to probate, a dispute arose among the heirs regarding the interstitial property. The heirs resolved their dispute and entered into a stipulated order, which stated in pertinent part:

> The parties further stipulate that, the value of the 30.71 acres of the Gunnison property owned by the decedent lying in and around the circular tracts within and excluded from the Gunnison County property shall be treated as being sold and conveyed by the decedent prior to his death. The 30.71 acres shall be conveyed to a Homeowners association which is controlled by the owners of the adjacent circular lots.

In accordance with this stipulated order, the personal representative created the Masden Association with the intent to transfer the interstitial property to it. Of the 80 properties involved, the owners of 16 properties joined the Masden Association. The owners of 51 properties formed a separate homeowners association, the Alliance, and the owners of 13 properties do not belong to either association.

Because there were two homeowners associations, the personal representative of the decedent's estate refused to transfer the interstitial property to either.

The Alliance then filed a motion in probate court requesting an order requiring that the personal representative transfer the interstitial property to it because it represented a majority of the property owners. Following a hearing on the issue, the court denied the Alliance's motion, concluding that the stipulated order required that the homeowners association receiving the interstitial property include all of the property owners in its membership. Therefore, the court refused to alter the rights of other owners without "giving them a say in the proceedings." The court also concluded that the personal representative had the right to convey the property "to any[body] he feels appropriate subject to all the other rights," including to the heirs of the estate.

In its C.R.C.P. 54(b) certification order, the probate court also concluded that the Alliance's claims should not be resolved in probate court and would be more properly considered in an action for declaratory judgment.

## I. Personal Representative's Duty Regarding Stipulated Order

■ The Alliance contends the stipulated order only requires that a homeowners association be controlled by a majority of property owners for it to receive title to the interstitial property, and thus the trial court erred in concluding otherwise and in not ordering that such property be conveyed to Alliance. In contrast, the Masden Association argues that this issue should not be resolved by the probate court. We agree with the Masden Association.

Section 15–12–912, C.R.S.2000, provides that private agreements entered into among successors of a decedent are binding on a personal representative, subject to certain exceptions. This section states, in relevant part:

> Subject to the rights of creditors, competent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent or under the laws of intestacy in any way that they provide in a written agreement, whether or not supported by a consideration, executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement *subject to his or her obligation* to administer the estate for the benefit of creditors, to pay all taxes and costs of administration, and *to carry out the responsibilities of his or her office for the benefit of any successors of the decedent who are not parties.* (emphasis added)

Generally, § 15–12–912 governs the actions of a personal representative after the parties have entered a stipulated order. However, an exception within § 15–12–912 requires a personal representative to act subject to his or her obligations to administer the estate, *inter alia,* for the benefit of any "successors of the decedent who are not parties." Here, in accordance with § 15–12–912, the heirs stipulated that the 30.71 acres of interstitial property would go to a homeowners association, thus divesting themselves of any right to this property.

By virtue of the stipulated order, the two homeowners associations and all of the individual property owners are the decedent's successors, or at least potential successors, with respect to the interstitial property. Accordingly, the stipulation must be effectuated consistent with the interests of all property owners, including those who are not members of either homeowners association. However, as stated above, only property owners of one property are actual parties to this appeal.

Because the personal representative must act for the benefit of all successors who are not parties, the personal representative cannot distribute the interstitial property without consideration of the individual interests of the owners of all 80 affected properties. Neither of the competing homeowners associations represents the interests of all property owners. Therefore, all individual property owners must be notified and afforded an opportunity to participate in a proceeding to determine ownership of the interstitial property. *See Dunne v. Shenandoah Homeowners Ass'n,* 12 P.3d 340 (Colo.App.2000) (trial court did not abuse its discretion by requiring joinder of all landowners in addition to the homeowners association, when one property owner sought declaratory relief against the homeowners association).

Because this probate proceeding is not an appropriate forum in which to resolve this property dispute, the personal representative must bring a separate proceeding, serve all of the affected property owners, personally or by publication, and obtain a binding judgment determining ownership of the interstitial property. *See* C.R.C.P. 105(a) (quiet title action); *see also* C.R.C.P. 22 (interpleader), 57(c) (declaratory judgment).

In such proceeding, all interested parties, the two homeowners associations, and the individual property owners must be joined and bound by the court's judgment. *See, e.g.,* C.R.C.P. 105(a) ("An action may be

brought for the purpose of obtaining a complete adjudication of the rights of all parties thereto, with respect to any real property . . . .").

Therefore, the trial court was correct in concluding in its C.R.C.P. 54(b) certification that the probate proceeding was not the proper forum to determine ownership of the interstitial property.

In light of our conclusion, we need not reach the Alliance's contention that the court erred in requiring that the homeowners association receiving title to the interstitial property be controlled by all of the property owners.

II. Personal Representative's Duty to Convey Property

 The Alliance next asserts that the trial court erred by ruling that, despite the stipulated order, the personal representative may convey the interstitial property to the heirs of the decedent or otherwise as he finds appropriate. We agree.

A personal representative is a fiduciary who must observe the standards of dealing with the estate that would be observed by a prudent person dealing with the property of another. Sections 15–12–703(1), 15–16–302, C.R.S.2000. The personal representative must use the authority conferred by statutes, the will in question, and court orders in the probate proceeding to act "for the best interests of successors to the estate." Section 15–12–703(1).

■ Until the termination of a personal representative's appointment, he or she has the same power over the title to the property of the estate that an absolute owner would have. However, the personal representative acts in a fiduciary capacity for the benefit of creditors or others interested in the estate. Section 15–12–711, C.R.S.2000.

Thus, a personal representative has no authority, statutory or otherwise, to return to the heirs property that was the subject of a stipulated order among the heirs pursuant to § 15–12–912. Once the property is subject to such a stipulated order, the personal representative has a fiduciary duty to enforce that order. See § 15–12–703(1).

· Because the personal representative must act for the benefit of others interested in the estate, he has a fiduciary duty to bring a separate proceeding, as discussed above, to resolve the legal ownership of the disputed interstitial property according to the terms of the stipulated order. See § 15–12–703(4), C.R.S.2000 (personal representative has standing to sue in courts of this state).

Because we concur with the probate court's conclusion in its C.R.C.P. 54(b) order that this matter must be resolved in a separate proceeding, the order is affirmed to the extent it denies the Alliance's motion, without prejudice to the determination of its rights in any subsequent proceeding.

The order is vacated to the extent it may be read to determine the rights of any person to receive the interstitial property under the stipulated order. The order is reversed in all other respects, specifically including any suggestion that the personal representative may convey the property in any way contrary to the terms of the stipulated order.

ROTHENBERG and ROY, JJ., concur.